IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AEGIS SECURITY INSURANCE COMPANY,** : | Civil No. 1:CV-06-0606 |
| Plaintiff, : | **JUDGE SYLVIA H. RAMBO** |
| v. : | |
| **HARCO NATIONAL INSURANCE COMPANY,** : | |
| Defendant. : | |

# **M E M O R A N D U M**

Before the court is Defendant Harco National Insurance Company's (hereinafter "Harco") Motion to Compel Arbitration and Stay Proceedings (Doc. 12). The parties have briefed the issues and the matter is ripe for disposition. For the following reasons, the court will grant Defendant's motion. Plaintiff has requested oral argument on the motion, which the court will deny as moot.

**I.** **Background**

**A.** **Facts**

Plaintiff Aegis Security Insurance Company (hereinafter "Aegis") and Defendant Harco are insurance companies that entered into reinsurance agreements to post immigration bonds, arranged by Capital Bonding Corporation (hereinafter "Capital Bonding") and other reinsurance intermediaries.

In or around June 2001, Aegis became the surety on bonds posted by Capital Bonding for the immigration bond program through December 31, 2001. Aegis continued as surety from January 1, 2002 through December 31, 2002

pursuant to a Bond Quota Reinsurance Agreement (hereinafter "the 2002 Reinsurance Treaty"). Under the terms of the 2002 Reinsurance Treaty Harco subscribed for a portion of Aegis's gross liability under the immigration bonds posted by Capital Bonding.[1] Aegis withdrew as surety when the 2002 Reinsurance Treaty expired and Harco became the surety for immigration bonds posted by Capital Bonding under a 2003 agreement (hereinafter the "2003 Reinsurance Treaty"). Aegis was a party to the 2003 Reinsurance Treaty but only in connection with bail and supersedeas bonds in three states for April and May 2003.

The parties agree that Harco owes Aegis for a portion of liabilities incurred during the time period governed by the 2002 Reinsurance Treaty, in connection with a settlement negotiated by Aegis with the United States Department of Homeland Security. Harco has paid and continues to pay its allocable share of the relevant losses and adjusted loss expense arising under the 2002 Reinsurance Treaty for bail bonds and supersedeas bonds, but refuses to pay related expenses arising from immigration bonds.

Harco claims that it is entitled to offset the immigration bond expenses because Capital Bonding improperly used revenues from the sale of bonds issued in Harco's name under the 2003 Reinsurance Treaty to make payments and cover losses incurred from bonds issued in Aegis's name under the 2002 Reinsurance Treaty. Article X of the 2002 Reinsurance Treaty, the offset provision, provides:

> The Company and the Reinsurer may offset any balance or amount due from one party to the other under this Agreement or any other agreement heretofore or hereafter

---

[1] Aegis also agreed to serve as surety for state bail bonds and supersedeas bonds posted by Capital Bonding; parties to the 2002 Reinsurance Treaty shared in liability for those as well. However, the instant dispute arises out of events involving the immigration bonds only.

>entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or ceding company. This provision shall not be affected by the insolvency of either party to this Agreement.

In addition, the 2002 Reinsurance Treaty contains an arbitration provision, which requires the parties to arbitrate "any dispute arising out of the interpretation, performance or breach of this Agreement." Both parties agree that the 2002 Reinsurance Treaty and the offset and arbitration provisions are valid.

### B.  Procedural History

On March 23, 2006 Aegis filed a complaint seeking a declaratory judgment that Harco has no right to offset any amounts it owes to Aegis under the 2002 Reinsurance Treaty based on Capital Bonding's allegedly improper administration of the 2003 Reinsurance Treaty with Harco. On May 2, 2006, Harco filed the instant Motion to Compel Arbitration and Stay Proceedings. Harco filed its brief in support of the motion on May 19, 2006.[2]

## II.  Legal Standard – Arbitrability

The Federal Arbitration Act (hereinafter "FAA"), 9 U.S.C. §§ 1 *et seq.*, governs the relief sought by Defendant. Where parties have entered into a written agreement for arbitration, the court may grant a party's petition to direct that an arbitration proceed "in accordance with the terms of the agreement." 9 U.S.C. § 4. Moreover, once the court has directed the parties to proceed with the arbitration, the court "shall on application of one of the parties stay the trial of the action until such

---

[2] In its opposition brief (Doc. 18), Aegis expresses a desire to resolve the merits of the instant motion, but disputes the timeliness of Harco's brief in support of the motion (Doc.17). The court has reviewed Harco's stated reasons for its interpretation of the due date and is satisfied that the brief in support of the motion was filed in accordance with applicable procedural rules.

arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Because the genesis of arbitration is contract, arbitrators only have authority to resolve disputes where parties have "agreed to submit to arbitration." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001) (internal citations omitted).  Accordingly, when a party requests a stay of proceedings pending arbitration, the court's inquiry is two-fold.  The court must "determine whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the substantive scope of that agreement." *Id.* at 55.  The court's function is "very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator." *Id.*  In such an instance, the court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract" and "must submit the matter to arbitration without ruling on the merits of the case." *Id.* (internal quotations omitted).

There is a strong presumption in favor of arbitration.  Any doubts about the scope of an arbitration provision are resolved in favor of arbitration. *Id.*  In addition, where a contract includes an arbitration clause, " '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475

U.S. 643, 649 (1986). *Id.* (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

**III.      Discussion**

Plaintiff maintains that, because Defendant relies upon events extraneous to the 2002 Reinsurance Treaty as the basis for the claimed offset, the 2002 Reinsurance Treaty's arbitration provisions do not govern the instant dispute. Defendant argues that in order to initially determine whether the claimed offset falls within the scope of the 2002 Reinsurance Treaty's provisions, the contract must be interpreted and, subsequently, must be submitted to arbitration. The court agrees with Defendant.

The 2002 Reinsurance Treaty explicitly provides for offsets. Plaintiff's position that the offset claimed cannot be an offset because the events giving rise to the offset claim fall outside the scope of the agreement does not alter this. In order to determine the extent and scope of the offset provision, specifically what may properly be used as an offset and what circumstances may give rise to an offset, it is necessary to interpret the offset provision. Such interpretation falls squarely within the scope of matters designated for arbitration by the parties. Accordingly, the decision whether a particular amount may be considered an offset within the scope of the agreement is, in the first instance, properly left to arbitration as designated by the parties.

The parties also dispute whether the Defendant's characterization of the offset claim in terms of unjust enrichment establishes that the instant dispute is not contractual and thus not subject to contractual arbitration provisions. Because the

contract expressly provides for offsets and the offset issue must be arbitrated, the court will not reach the merits of the unjust enrichment argument.

**IV.     Conclusion**

      For the foregoing reasons, the court will grant Defendant's motion to compel arbitration and stay proceedings. The court will also deny Plaintiff's request for oral argument on the motion as moot. An appropriate order will issue.

                      s/Sylvia H. Rambo
                      SYLVIA H. RAMBO
                      United States District Judge

Dated: June 22, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AEGIS SECURITY INSURANCE COMPANY,** | : Civil No. 1:CV-06-0606 |
| Plaintiff, | : **JUDGE SYLVIA H. RAMBO** |
| v. | : |
| **HARCO NATIONAL INSURANCE COMPANY,** | : |
| Defendant. | : |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**

1) Defendant Harco National Insurance Company's Motion to Compel Arbitration and Stay Proceedings (Doc. 12) is **GRANTED**.

2) Plaintiff Aegis Security Insurance Company's request for oral argument on the motion is **DENIED** as moot.

3) The captioned matter is stayed pending arbitration.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: June 22, 2006.